<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re Application of CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in a Foreign Proceeding. | Civil Action No. 16-4251 (SRC)<br><br>**OPINION** |

**<u>CHESLER</u>**, District Judge

This matter comes before the Court on the appeal by Volkswagen Group of America, Inc. ("VWGoA" or "Appellant") of Magistrate Judge Cathy L. Waldor's December 28, 2016 Opinion and Order. [Docket Entry 45]. California State Teachers Retirement System ("CalSTRS" or "Applicant" or "Appellee") has opposed. [Docket Entry 47]. For the reasons that follow, Judge Waldor's Order is affirmed.

**I.    BACKGROUND**

This matter arises out of one of the many lawsuits filed in relation to Volkswagen's use of defeat devices designed to cheat on emissions tests. More specifically, this appeal stems from CalSTRS's application to the United States District Court for the District of New Jersey for an order authorizing it to serve a subpoena on VWGoA, the American subsidiary of the German company Volkswagen AG, for the production of documents. CalSTRS seeks to use VWGoA's documents in a lawsuit it filed in Germany against Volkswagen AG. CalSTRS, a shareholder of Volkswagen AG, asserts in the German lawsuit that Volkswagen AG violated German securities laws by failing to inform investors about its use of the defeat device software in its vehicles, which was material non-public information. In the alternative, CalSTRS asserts that Volkswagen AG acted with gross negligence to the extent the company

was unaware of inside information.

On July 21, 2016, Judge Waldor granted CalSTRS's ex parte application for an order pursuant to 28 U.S.C. § 1782, granting leave to serve a subpoena for documents from VWGoA for use in the German proceeding. [Docket Entry 3]. On September 9, 2016, VWGoA moved to vacate the Order and quash the related subpoena. [Docket Entry 23]. Magistrate Judge Waldor considered the papers of both parties on the motion to vacate and heard oral argument, and on December 28, 2016, Judge Waldor denied VWGoA's motion to vacate or to quash the subpoena. [Docket Entry 44 (hereinafter "Opinion" or "Opinion and Order")]. In her Opinion and Order, Judge Waldor instructed CalSTRS to strike its twenty-seventh request from its subpoena but permitted discovery pursuant to the remainder of the subpoena. (Opinion at 7). VWGoA now appeals the December 28, 2016 Opinion and Order.

## II. LEGAL STANDARD

### A. STANDARD OF REVIEW

As a preliminary matter, the parties disagree on what standard of review applies in reviewing Judge Waldor's Opinion and Order. VWGoA suggests that because Judge Waldor's ruling was dispositive, it is subject to de novo review. (Appellant Br. 12). CalSTRS, on the other hand, argues that the "clearly erroneous or contrary to law" standard applies to applications under § 1782. (Appellee Br. 11-12). This Court need not decide which standard of review applies because under either standard, the Court is firmly convinced that Judge Waldor's ruling is correct. Even assuming arguendo that de novo review applies, this Court will affirm Judge Waldor's decision.

2

B. **SECTION 1782 APPLICATIONS**

In deciding whether to grant a § 1782 application for the production of discovery for use in a foreign tribunal, the Court first must determine whether the statutory requirements are met, and then determine whether to exercise its discretion to grant the application. *In re O'Keeffe*, 646 F. App'x 263, 265-66 (3d Cir. 2016). The three statutory requirements are: (1) that the application seeks discovery from a person or entity who is a resident or can be found in the district in which the application is filed, (2) that discovery is for use in a proceeding in a foreign tribunal, and (3) that the application is made by a foreign or international tribunal or by an interested person. *Kulzer v. Esschem*, 390 Fed. App'x 88, 91 (3d Cir. 2010); *In re Matter of Application of Oxus Gold PLC*, No. 06-82, 2006 WL 2927615, at *4 (D.N.J. Oct. 11, 2006).

The Supreme Court laid out four factors that are relevant to the district court's discretionary decision of whether to grant a § 1782 application in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). These factors include: "(1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; (4) whether the subpoena contains unduly intrusive or burdensome requests." *O'Keeffe*, 646 F. App'x at 266 (citing *Intel*, 542 U.S. at 264-65).

### III. ANALYSIS

Appellant does not contest that the three statutory requirements for § 1782 applications have been met. Instead, Appellant argues that Judge Waldor's Opinion and Order should be reversed because Judge Waldor erred in her analysis of three out of four of the discretionary *Intel* factors, namely factors one, three, and four.[1] The Court will address these factors in turn.

#### A. FACTOR ONE

Appellant argues that Judge Waldor erred in concluding that the first factor weighs in favor of granting the § 1782 application. The Third Circuit's description of the first *Intel* factor focuses on whether the discovery is "within the foreign tribunal's jurisdictional reach, and therefore accessible without seeking the aid of § 1782." *Esschem*, 390 Fed. App'x at 91.

In *Esschem*, the plaintiff company Hareaus sought to use documents in a German proceeding against its direct competitor, Biomet. *Id.* at 90. Hareaus sought documents from Esschem, the company that supplied materials to Biomet for use in manufacturing. *Id.* at 88-90. It sought discovery including "specifications in Esschem's files and any communications between Esschem and Biomet about the materials supplied" that were located in the U.S. *Id.* at 90. The Third Circuit determined that the evidence Hareaus was seeking in the U.S. Court was likely unobtainable in Germany because "German civil procedure does not offer a mechanism for general pretrial discovery comparable to that obtainable in the United States; any request to the German court must be for *specific* documents, and without access to [the party defendant]'s files, [an applicant] cannot pinpoint what it is seeking; and the German court has no jurisdiction

---

[1] Appellant does not dispute Judge Waldor's finding as to the second factor. In her analysis, Judge Waldor found that Appellant failed to show that German courts are not receptive to accepting evidence obtained through § 1782 applications.

4

over a non-party. . . ." *Id.* at 92.  Thus, the Third Circuit held that the documents were likely "unobtainable absent § 1782(a) aid".  *Id.* at 92 (citing *Intel*, 542 U.S. at 264).

This case is much like *Esschem*.  Here, the applicant, CalSTRS, seeks documents from VWGoA, the American company that marketed and sold vehicles with defeat devices in the U.S. (Appellant Br. 7).  Like in *Esschem,* the Applicant seeks documents that show Volkswagen AG's communications with VWGoA.  VWGoA is not a party to the German lawsuit and the documents CalSTRS seeks are located in the U.S.  Because German civil procedure does not allow general pretrial discovery, and because the German court lacks jurisdiction over a non-party with documents in the U.S., the documents are likely unobtainable without the aid of § 1782.  Judge Waldor recognized this in her Opinion.  (See Opinion at 5) ("As indicated in Dr. Stadler's affidavit, a German law professor at the University of Konstanz, the German court has no legal authority to compel VWGoA to produce any documents.  Additionally, there is no concept of discovery in German litigation.") (internal citations omitted).  Thus, like in *Esschem*, the first factor weighs in favor of granting the application.[2]

Appellant argues that the first factor does not weigh in favor of granting the application because some of the documents sought might exist in Germany and thus are within the foreign

---

[2] Appellant cites a non-binding case for the proposition that an applicant cannot seek § 1782 discovery from a non-party when it is effectively seeking discovery from the party to the lawsuit. *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-MC-80048, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016).  In *In re Varian*, however, the Northern District of California Court found that even though the applicant was seeking documents from a subsidiary as a way of seeking discovery from the parent company, it was unclear whether a German court would be able to compel the discovery that the applicant was seeking and thus the "first *Intel* factor is no more than neutral." *Id.* at *4.  Ultimately, that court granted the § 1782 application in that case. Thus, Appellant's citation does not convince the Court that the first factor weighs against granting the application.

5

jurisdiction's reach. But, this argument is unconvincing. First, Appellant does not come forward with any evidence of these documents actually existing in Germany. Second, just because documents are located in Germany does not mean that the documents are accessible through German discovery. *See Esschem*, 390 Fed. App'x at 91 (focusing on whether discovery is "accessible without seeking the aid of § 1782."). As VWGoA's counsel admitted in another case, *In re Porsche*, "[German] courts can order document production only when documents are described in great detail." No. 15-MC-417, 2016 WL 702327, at *1, *7 (S.D.N.Y. Feb. 18, 2016) (noting that in Germany, discovery is conducted by judges, not lawyers). Thus, even if the documents are located in Germany, the German court will not order the documents to be produced if the applicant does not provide detailed information on the documents.

Knowing this, Appellant argues that the German court can order the documents to be produced in this case because CalSTRS can identify the specific dates on which many of the documents were created, the subject matter of many of the documents, and the author or recipient of many of the documents. Yet, a plaintiff in a German suit seeking discovery must identify each individual document by "providing the title, content and date of the document." *In re the Application of Sauren Fonds-Select SICAV v. For Discovery Pursuant to 28 U.S.C. § 1782*, No. 16-133, 2016 WL 6304438, at *5 (D.N.J. Oct. 26, 2016). Appellant does not suggest that CalSTRS knows the titles of the specific documents. Nor does Appellant suggest that CalSTRS has all of the required information for each document. Thus, Appellant fails to show that CalSTRS has enough information for a German court to require production of the documents it seeks. Because it is not at all likely that a German court would order the documents to be produced, U.S. assistance is necessary to obtain the documents. Contrary to Appellant's

6

arguments, the first factor weighs in favor of granting the application.

### B. FACTOR THREE

Appellant next suggests that the third factor weighs against granting the application. The third *Intel* factor is "whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States." *O'Keeffe*, 646 F. App'x at 266.[3] This Court agrees with Judge Waldor's statement in her Opinion that "German courts often welcome this evidence as part of their proceedings." (Opinion at 6). Because there is no indication that a request under § 1782 circumvents any German policy on discovery, this Court does not find Appellant's argument persuasive that factor three weighs against granting the application.

Appellant argues that first, CalSTRS is attempting to "bypass foreign discovery rules" because it "race[d] to the U.S. courts for Section 1782 discovery" less than a month after filing the German action, and has never sought discovery from Volkswagen AG in Germany. (Appellant Br. 27). This exact argument was made in relation to the third *Intel* factor in *In re Porsche.* There, the movants argued that the applicant "never attempted to obtain the evidence it seeks in German court." *In re Porsche*, 2016 WL 702327, at *9. The Court found this argument

---

[3] A party cannot show circumvention of foreign proof-gathering rules simply by showing that the foreign jurisdiction does not allow for discovery. As the Third Circuit has stated, "[i]f district courts were free to refuse discovery based upon its unavailability in a foreign court . . . § 1782 would be irrelevant to much international litigation, frustrating its underlying purposes." *In re Bayer AG,* 146 F. 3d 188, 195 (3d Cir. 1998) (internal citations omitted). The entire point of § 1782 is to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Intel*, 542 U.S. at 262. CalSTRS thus aptly explains that "[i]f the mere fact a foreign proceeding is foreign is a factor against allowing Section 1782, then by definition *every* Section 1782 application would need to be rejected." (Appellee Br. 24).

7

"unpersuasive," and held that there was no "'exhaustion' or 'qausi-exhaustion' requirement . . . that would require an applicant to previously have tried and failed to obtain the sought evidence in the foreign proceeding in order to obtain relief under Section 1782." *Id.* The Third Circuit has similarly stated that with respect to the third factor "[w]e have never held that an applicant must seek discovery relief in the foreign forum first." *O'Keeffe,* 646 F. App'x at 268.[4] Here, therefore, Appellant's suggestion that CalSTRS bypassed German law by not first requesting discovery in Germany is unpersuasive.

Appellant makes a second argument on factor three – that CalSTRS is attempting to circumvent a forum-selection clause in Volkswagen AG's Articles of Association. Appellant argues that by seeking discovery in the U.S., it undermines the clause in Volkswagen AG's Articles of Association which states that shareholder disputes are to be brought in the Company's domicile. Appellant supports its argument with *In re Application of Kreke Immobilien KG,* a case in which the district court held that Kreke was circumventing foreign proof-gathering restrictions. No. 13-110, 2013 WL 5966916, at *6-7 (S.D.N.Y. Nov. 8, 2013). In that case, the Southern District of New York Court gave two reasons for its determination that the third factor weighed against granting the § 1782 application: first, this was a "case where a German petitioner is seeking discovery from a German respondent for use against a German defendant in a German proceeding" and thus there was an "overwhelmingly German character of Kreke's

---

[4] Appellant argues that "a perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013). But, in the case that it cites, the Court found that "Korean discovery was available" and the party side-stepped it by immediately applying for § 1782 discovery. *Id.* Here, in contrast, German discovery is likely not going to occur. Thus, seeking § 1782 discovery was not side-stepping foreign proof-gathering policies.

8

discovery application"; and second, Kreke had signed a contract with a forum selection clause. *Id.* That forum-selection clause stated that Kreke agreed to a "[foreign] forum with all its requisite procedural rules". *Id.* at *7.

This case is distinguishable from *Kreke*. First of all, despite Appellant's contention that the locus of the German action is "clearly in Germany", the character of the litigation is not overwhelmingly German. Here, the German proceeding is only one of the many lawsuits arising out of Volkswagen AG's and VWGoA's use of a defeat device to cheat emissions tests. Unlike in *Kreke,* where the "case arose out of conduct that took place in Germany, that the parties are all located in Germany, that all physical documents are in Germany, and that all electronic documents are accessible just as easily from Germany. . .", *id.* at *4, here "CalSTRS seeks documents present in the U.S., about misconduct that occurred in the U.S., from a U.S. entity that assisted in carrying out wrongdoing in the U.S., leading to the creation of massive liabilities in the U.S." (Appellee Br. 24). Therefore, the character of the litigation is not so "clearly German."

This case is also distinguishable from *Kreke* because the forum selection clause in Volkswagen AG's Articles of Association did not contain a provision stating that the forum selection clause applied to procedural rules. The Articles of Association only stated that shareholder suits must be brought in Germany,[5] but that does not mean that CalSTRS could not

---

[5] The exact language of the forum-selection clause in the Articles of Association is as follows:

> The sole place of jurisdiction for all disputes between shareholders and of the beneficiaries or obligors of financial instruments relating to the Company's shares on the one hand, and the Company on the other, shall be the Company's domicile unless mandatory statutory provisions require otherwise. This also applies to disputes relating to compensation claimed for damage caused by false or misleading public capital market

9

investigate it elsewhere. Especially where, as here, the deception at issue occurred in part in the United States, CalSTRS is entitled to investigate in the United States. Thus, Appellant's forum-selection clause argument is unconvincing.[6] Because the Court finds that German courts often welcome evidence from § 1782 applications and Applicant was not circumventing foreign proof-gathering policies, the Court agrees with Judge Waldor's analysis of the third factor.

### C. FACTOR FOUR

Lastly, the Court will address Appellant's argument on the fourth *Intel* factor, "whether the subpoena contains unduly intrusive or burdensome requests." *O'Keeffe*, 646 F. App'x at 266. As Appellant points out, "Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules 26 and 45. Thus, assessment of the fourth factor is virtually identical to the familiar 'overly burdensome' analysis that is integral to the Federal Rules." *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85-86 (3d Cir. 2016).

#### i. RULE 26

To start, Appellant argues that the document requests do not comply with Rule 26. Under Federal Rule of Civil Procedure 26(b)(1), discovery must be "relevant to any party's claim or defense and proportional to the needs of the case." "Information within this scope of

---

information, or the failure to provide such information. Foreign courts shall not have jurisdiction over such disputes.

(Appellant Br. 28; Appellee Br. 26).

[6] CalSTRS argues that Appellant waived its forum-selection clause argument because it mentioned it for the first time at oral argument. The Court finds that even if it considered the argument, it is not persuasive.

discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).[7]

First, Appellant argues that VWGoA's documents are irrelevant to the key issue of the German action: whether Volkswagen AG had knowledge of material non-public information or whether Volkswagen AG was grossly negligent of the emissions manipulation. In Appellant's words, "because they [CalSTRS] seek documents possessed solely by VWGoA, they cannot bear on [Volkswagen AG]'s culpability in the German action." (Appellant Br. 17).

Nevertheless, VWGoA's documents are likely very relevant to CalSTRS's claim because VWGoA is integrally related to the subject matter of the litigation and the Court cannot ignore the relationship between VWGoA and its parent company in Germany as relevant to the lawsuit. Appellant argues that VWGoA did not manufacture the engines at issue. But, Appellant admits that VWGoA marketed and sold hundreds of thousands of vehicles that used defeat devices in the U.S, (Appellant Br. 10 n.3) , bringing about numerous lawsuits in the U.S. Many of the documents include Volkswagen AG's communications with VWGoA and show what Volkswagen AG ordered that VWGoA do. This information only exists in VWGoA's files and may be extremely relevant in showing what the German parent company knew. Even documents between VWGoA and government regulators or car dealers are likely to reveal information as to the knowledge of both the subsidiary and the parent company. Additionally, the documents may be relevant in showing that Volkswagen AG willfully ignored potential issues occurring at its

---

[7] Appellant argues that discovery "[m]ust be reasonably calculated to lead to discovery of admissible evidence." Appellant cites Federal Rule of Civil Procedure 26(b)(1) before it was amended in 2015. In 2015, the phrase "reasonably calculated to lead to discovery of admissible evidence" was deleted from the Federal Rules because it had been "used by some, incorrectly, to define the scope of discovery." Fed. R. Civ. P. 26 committee notes. The amended rule reinforces that relevance and proportionality are key to defining the scope of discovery, rather than future admissibility.

11

American subsidiary that it should have investigated.  Therefore, the Court finds that the requests of VWGoA's documents are highly relevant to the party's claims.

Second, Appellant argues the requests do not comply with Rule 26 because they are not proportional.  Appellant argues that the requests are overbroad because they are from a twelve-year period and include a "massive volume of irrelevant documents".  Moreover, Appellant argues that CalSTRS admitted that it will not use many of the documents.

This Court does not find Appellant's proportionality argument to be persuasive.  First, CalSTRS seeks specific relevant documents related to Volkswagen AG and VWGoA's use of the defeat device, their knowledge of its use, their motivation for using the defeat device, and their knowledge that it needed to disclose material information on the defeat device to the public. [8]

---

[8] One of Appellant's contentions is that Judge Waldor did not go through each of the twenty-six requests in her Opinion, determining that each request was narrowly tailored.  Judges often determine that a subpoena is not unduly burdensome without analyzing each request in the subpoena.  *See, e.g.*, *In re Sauren Fonds*, 2016 WL 6304438, at *6-7; *In re Michael Kors,* No. 15-1978, 2016 WL 4472950, at *4 (D.N.J. 2016).  Yet, even if the Court went through the requests, it would still determine that the requests were narrowly tailored.  With respect to requests one, two, four, and twelve, Applicant seeks these documents to show that Volkswagen used the defeat device software, including through VWGoA sales in the U.S.  These documents also may show that Volkswagen began using the devices in response to new EPA emissions regulations.  Put together with the other documents, this can reveal a motive and show Volkswagen AG's knowledge.  Requests three, eight, nine, ten, thirteen, fourteen, seventeen, and twenty-six may reveal internal discussions on the use of defeat devices to show that Volkswagen AG's board members knew about the defeat devices, and knew of its use in the U.S. through VWGoA.  Requests five, six, seven, twenty-one, and twenty-two seek documents showing concrete evidence that Volkswagen AG was manipulating emissions values.  This can show that Volkswagen AG knew about the impact of the defeat devices and thus knew of material non-public information that it was obliged to disclose to the public.  Requests eleven, fifteen, and sixteen seek communications regarding Volkswagen's obligation to make public disclosures.  Even though these documents are in possession of VWGoA, they may still reveal what its parent company was required to disclose.  Additionally, Request eleven seeks the "source code(s) of the defeat device software," which may be relevant to showing the intentional deception of the defeat device and may show the company's knowledge.  Requests eighteen, nineteen, twenty, twenty-three, twenty-four, and twenty-five seek documents relating to Volkswagen's communications with regulators which show Volkswagen AG's and VWGoA's knowledge.

Second, there is no requirement that a party use every document it looks at in discovery.[9] Finally, and most importantly, discovery is proportional here because VWGoA is not a unrelated non-party, but a party that has incurred billions of dollars in fines for its conduct involving the defeat device. Given the magnitude of deception at issue in this case, the Court is not prepared to conclude that the document requests here are excessive or overbroad.

### ii. RULE 45

Lastly, Appellant argues that the Applicant is imposing an "undue burden" on VWGoA, in violation of Federal Rule of Civil Procedure 45. Rule 45(d)(1) provides "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

Appellant argues that CalSTRS had the ability to seek documents from Volkswagen AG itself, rather than VWGoA, a non-party. Nevertheless, as this Court has addressed above, given the limited nature of discovery in Germany, it is not at all likely that CalSTRS would be able to

---

They may also show that Volkswagen AG and VWGoA admitted to the EPA and other regulators that they had been manipulating emissions values. Judge Waldor instructed CalSTRS to strike Request twenty-seven, which sought documents already produced by VWGoA in multi-district litigation pending in the Northern District of California. With that adjustment, she found that the "twenty-six tailored requests . . . target specific issues and seek particular documents." (Opinion at 7). Because each remaining request seeks specific documents that are relevant to the Applicant's claims in the German case, this Court similarly finds that the requests are acceptable under the fourth *Intel* factor.

[9] Appellant argues that Applicant's application is a fishing expedition, citing *In re Baltic Soul mgH & Co. KG,* No. 15-MISC-319, 2015 WL 5824505 (S.D.N.Y Oct. 6, 2015). In that case, however, the applicant requested disclosure of "every financial transaction these [seven] companies have engaged in with 11 different banks, along with considerable additional financial information," when the applicant had not yet initiated litigation and could only bring suit on one issue of alter ego status. *Id.* at *3. This case is different. Here, Applicant has initiated litigation in Germany and has an entire suit to litigate in Germany. Additionally, Applicant's requests are far more specific and narrowly tailored than the requests in *Baltic Soul* for "every financial transaction" that the company engaged in.

13

seek the documents from Volkswagen AG through the German proceeding.  Moreover, VWGoA is integrally related to the lawsuit and is not an uninvolved party.  Ultimately, the Court finds that the documents requests are not an undue burden.  Thus, Appellant fails to show that the fourth *Intel* factor weighs against granting the application.

## IV.   CONCLUSION

For the foregoing reasons, the Court will affirm Judge Waldor's December 28, 2016 Opinion and Order [Docket Entry 44] in its entirety.  An appropriate form of Order accompanies this Opinion.

　　s/ Stanley R. Chesler　　
STANLEY R. CHESLER
United States District Judge

Dated: April 3, 2017

14